Slip Op. 17-16

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **WELL LUCK CO., INC.,**<br><br>          **Plaintiff,**<br><br>**v.**<br><br>**UNITED STATES,**<br><br>          **Defendant.** | **Before: Claire R. Kelly, Judge**<br><br>**Court No. 13-00064** |

## OPINION

[Granting Defendant's motion for summary judgment and denying Plaintiff's cross motion for summary judgment.]

Dated: February 15, 2017

Luis F. Arandia, Jr. and Robert Thomas Givens, Givens & Johnston, PLLC, of Houston, TX, for plaintiff.

Alexander J. Vanderweide, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of New York, NY, for defendant.  With him on the brief were Benjamin C. Mizer, Principal Deputy Assistant Attorney General and Amy M. Rubin, Assistant Director, International Trade Field Office.  Of counsel on the brief was Sheryl A. French, Office of the Assistant Chief Counsel International Trade Litigation, U.S. Customs and Border Protection.

          Kelly, Judge:   This matter is before the court on cross-motions for summary

judgment regarding the proper classification of Plaintiff's entry of roasted, salted, and/or

flavored whole sunflower seeds in their shells.[1]  See Def.'s Mot. Summ. J., Sept. 1, 2016,

ECF No. 29; Pl.'s Cross Mot. Summ. J., Oct. 10, 2016, ECF No. 32.  Defendant maintains

---

[1] On June 5, 2015, the court granted Plaintiff's consent motion to designate this action as a test case "selected from a number of other pending actions involving the same significant question of law or fact, that is intended to proceed first to final determination to serve as a test of the right to recovery in other actions" in accordance with USCIT Rule 84.  See Order, June 5, 2015, ECF No. 19; see also USCIT R. 84.

that summary judgment should be granted in its favor because there is no genuine issue

of material fact that United States Customs and Border Protection ("Customs") properly

classified Plaintiff's entry of roasted, salted, and/or flavored whole sunflower seeds in their

shell imported by Well Luck Co., Inc. ("Well Luck") under Harmonized Tariff Schedule of

the United States (2010) ("HTSUS") subheading 2008.19.90,[2] which covers "Fruits, nuts

and other edible parts of plants, otherwise prepared or preserved, whether or not

containing added sugar or other sweetening matter or spirit, not elsewhere specified or

included: Nuts, peanuts (ground-nuts) and other seeds, whether or not mixed together:

Other, including mixtures: Other" at a duty rate of 17.9% ad valorem.  See Def.'s Mem.

Supp. Mot. Summ. J. 5–13, Sept. 1, 2016, ECF No. 29 ("Def.'s SJ Br.").   Plaintiff

challenges Customs' denial of its protest contesting Customs' classification of its imported

merchandise within subheading 2008.19.90, HTSUS.   Compl. ¶¶ 20, 21–44, Sept. 2,

2014, ECF No. 5.  Plaintiff contends Defendant's motion for summary judgment should

be denied and that summary judgment should be granted in its favor.   Mem. Law and

Authorities Supp. Well Luck Company, Inc.'s Cross-Mot. Summ. J. and Resp. Def.'s Mot.

Summ. J. 10–38, Oct. 10, 2016, ECF No. 32 ("Pl.'s Br. Supp. X-Mot. SJ and Resp.")

Plaintiff contends there is no genuine issue of material fact that Customs misclassified its

entry, and that, as a matter of law, Customs should have classified its entry under

subheading 1206.00.00, HTSUS, which covers "Sunflower seeds, whether or not broken"

---

[2] Plaintiff's Entry Number D52-0938894-6 was entered on April 9, 2010 through the Port of Los Angeles/Long Beach.  See Summons, Feb. 8, 2013, ECF No. 1.  Therefore, all references to the HTSUS refer to the 2010 edition corresponding to the version of the HTSUS in effect at the time of entry.

at a duty-free rate.  <u>Id.</u>  For the reasons that follow, the court grants Defendant's motion

for summary judgment and denies Plaintiff's cross-motion for summary judgment.

## JURISDICTION AND STANDARD OF REVIEW

The court has jurisdiction pursuant to 28 U.S.C. § 1581(a) (2006) and Section 515

of the Tariff Act of 1930, as amended, 19 U.S.C. § 1515 (2006),[3] which together grant the

court authority to review actions contesting the denial of a protest regarding the

classification of imported merchandise, and the court reviews such actions de novo.  28

U.S.C. § 2640(a)(1) (2006).  The court will grant summary judgment when "the movant

shows that there is no genuine dispute as to any material fact and the movant is entitled

to judgment as a matter of law."  USCIT R. 56(a).

## UNDISPUTED FACTS

The following facts are not in dispute.  The imported merchandise in Plaintiff's entry

consists of "three varieties of wet-cooked and/or roasted, salted, flavored and/or

unflavored sunflower seeds in unbroken shells": "All Natural Flavor," "Spiced Flavor," and

"Coconut Flavor."  Def.'s Statement Undisputed Material Facts ¶¶ 1–2, Sept. 1, 2016,

ECF No. 29 ("Def.'s Statement Facts"); Pl.'s Resps. Def., Rule 56.3 Statement

Undisputed Material Facts ¶¶ 1–2, Oct. 10, 2016, ECF No. 32 ("Pl.'s Resp. Def.'s Facts").

The contents of the "All Natural Flavor" variety are sunflower seeds and salt.  Def.'s

Statement Facts ¶ 2(a); Pl.'s Resp. Def.'s Facts ¶ 2(a).  The contents of the "Spiced

Flavor" variety are sunflower seeds, salt, spice, artificial sweetener (Acesulfame

---

[3] Further citations to the Tariff Act of 1930, as amended, are to the relevant portions of Title 19 of
the U.S. Code, 2006 edition.

Potassium), Monosodium Glutamate, and artificial Flavor.  Def.'s Statement Facts ¶ 2(b);

Pl.'s Resp. Def.'s Facts ¶ 2(b).  The contents of the "Coconut Flavor" variety are sunflower

seeds, salt, coconut flavor, artificial sweetener (Acesulfame Potassium), and

Monosodium Glutamate.  Def.'s Statement Facts ¶ 2(c); Pl.'s Resp. Def.'s Facts ¶ 2(c).

The sunflower seeds in all varieties of Plaintiff's imported merchandise are of the common

sunflower, *Helianthus annuus*, and the seeds used by Plaintiff are used, as is, for human

consumption and not for the extraction of edible or industrial oils or fats.  Def.'s Statement

Facts ¶¶ 5–7; Pl.'s Resp. Def.'s Facts ¶¶ 5–7.

All of the varieties of Plaintiff's imported merchandise are initially processed by

being machine and hand selected for quality, size, and purity.  Def.'s Statement Facts

¶¶ 3(i), 4(i); Pl.'s Resp. Def.'s Facts ¶¶ 3(i), 4(i).  Following selection, the sunflower seeds

for Plaintiff's "Spiced Flavor" and "Coconut Flavor" varieties are further processed by

being "immersed in water, sweeteners, spice and/or flavoring at 248 degrees Fahrenheit

(120 degrees Celsius) for approximately 120 minutes."  Def.'s Statement Facts ¶ 4(ii);

Pl.'s Resp. Def.'s Facts ¶ 4(ii).  The seeds for the "Spiced Flavor" and "Coconut Flavor"

varieties are then dried.  Def.'s Statement Facts ¶ 4(iii); Pl.'s Resp. Def.'s Facts ¶ 4(iii).

Following selection for the "All Natural Flavor" variety and following drying for the "Spiced

Flavor" and "Coconut Flavor" varieties, the seeds in all varieties of Plaintiff's imported

merchandise are then further processed by being heated in an oven to 302 degrees

Fahrenheit (150 degrees Celsius) for approximately 65 minutes.  Def.'s Statement Facts

¶¶ 3(ii), 4(iv); Pl.'s Resp. Def.'s Facts ¶¶ 3(ii), 4(iv).  Salt is added to the seeds during this

heating process for all varieties.  Def.'s Statement Facts ¶¶ 3(ii), 4(iv); Pl.'s Resp. Def.'s

Facts ¶¶ 3(ii), 4(iv).  The sunflower seeds in all of Plaintiff's imported merchandise are then cooled, and those in unbroken shells are packaged into finished product bags sold for consumption and imported.  Def.'s Statement Facts ¶¶ 3(iii), 3(iv), 4(v), 4(vi); Pl.'s Resp. Def.'s Facts ¶¶ 3(iii), 3(iv), 4(v), 4(vi).

Plaintiff's imported merchandise is "not fungible or interchangeable with raw sunflower seeds."  Def.'s Statement Facts ¶ 8; Pl.'s Resp. Def.'s Facts ¶ 8.  Nor is Plaintiff's imported merchandise "fungible or interchangeable with sunflower seeds that [: (1)] "only undergo heat treatment designed to ensure better preservation of the seeds (*e.g.*, by inactivating lipolytic enzymes and eliminating moisture"; (2) "only undergo heat treatment to inactivate anti-nutritional factors"; (3) "only undergo heat treatment to facilitate their use"; or (4) "are not roasted, salted and flavored."  Def.'s Statement Facts ¶¶ 9–12; Pl.'s Resp. Def.'s Facts ¶¶ 9–12.  The sunflower seeds in Plaintiff's imported products "do not undergo heat treatment designed mainly for the purpose of de-bittering." Def.'s Statement Facts ¶ 13; Pl.'s Resp. Def.'s Facts ¶ 13.

## DISCUSSION

### I.  The Meaning of the Competing Tariff Terms

The dispute concerns the proper classification of Plaintiff's roasted, salted, and/or flavored sunflower seeds.  Plaintiff argues that its entry of imported merchandise, as a matter of law, is classifiable under subheading 1206.00.00, HTSUS, which covers "sunflower seeds, whether or not broken . . . Free."  Pl.'s Br. Supp. X-Mot. SJ and Resp. 5; see also Heading 1206, HTSUS.   Defendant counters that Plaintiff's imported

merchandise was correctly classified under subheading 2008.19.90, HTSUS which

covers:

> 2008 Fruit, nuts, and other edible parts of plants, otherwise prepared or preserved, whether or not containing added sugar or other sweetening matter or spirit, not elsewhere specified or included:
>
> . . .
>
> 2008.19        Other, including mixtures:
>
> . . .
>
> 2008.19.90   Other.                               17.9%.

Subheading 2008.19.90, HTSUS.

### A. Subheading 1206.00.00, HTSUS

Plaintiff argues that the phrase of "sunflower seeds" in subheading 1206.00.00,

HTSUS includes roasted, salted, and/or flavored sunflower seeds.[4]  Pl.'s Br. Supp. X-

Mot. SJ and Resp. 11–19.   Defendant contends that the relevant sources define

"sunflower seeds" as seeds of the common sunflower plant, *Helianthus annuus*,

irrespective of any treatment or use, and the Explanatory Note to the Harmonized

Commodity Description Coding System ("EN")[5] clarifies that subheading 1206.00.00,

HTSUS only encompasses seeds of the *Helianthus* annuus that are minimally processed.

Def.'s Resp. Pl.'s Cross-Mot. Summ. J. and Reply Supp. Def.'s Mot. Summ. J. 2–3, and

5, Dec. 14, 2016, ECF No. 35 ("Def.'s Resp. X-Mot. and Reply Br."); Def.'s SJ Br. 6–8.

---

[4] Neither party argues that the term "whether or not broken" is relevant to determining whether Plaintiff's imported merchandise falls within Heading 1206, HTSUS.

[5] All citations to the ENs are to the 2007 version, the most recently promulgated edition at the time of importation.

Determining the correct classification of merchandise involves two steps.  First, the court determines the proper meaning of the tariff provisions, a question of law.  See Link Snacks, Inc. v. United States, 742 F.3d 962, 965 (Fed. Cir. 2014).  Second, the court determines whether the subject merchandise properly falls within the scope of the tariff provisions, a question of fact.  Id.  Where no genuine "dispute as to the nature of the merchandise [exists], then the two-step classification analysis collapses entirely into a question of law."  Link Snacks, 742 F.3d at 965–66 (citation omitted).  Customs classification is governed by the General Rules of Interpretation ("GRI"), which are part of the HTSUS statute.  BenQ Am. Corp. v. United States, 646 F. 3d 1371, 1376 (Fed. Cir. 2011).  When determining the correct classification for merchandise, a court first construes the language of the headings in question "and any relative section or chapter notes."  GRI 1.  The "terms of the HTSUS are construed according to their common commercial meanings."  BenQ Am., 646 F.3d at 1376 (internal quotation omitted).

The tariff term "sunflower seeds" encompasses seeds of the *Helianthus annuus* that are minimally further processed only to an extent that leaves the seeds suitable for general uses, including sowing and oil extraction.  Neither party disputes that the meaning of the tariff term "sunflower seeds" includes the seeds of the common sunflower plant, *Helianthus annuus*.  See Pl.'s Br. Supp. X-Mot. SJ and Resp 19; Def.'s Resp. X-Mot. and Reply Br. 3.  All of the dictionary and encyclopedia sources offered and relied upon by Plaintiff define "sunflower seeds" as the seeds of the plant, *Helianthus annuus*, or as the

seeds of the "sunflower" or "common sunflower" plant.  See Pl.'s SJ Br. 11–15;[6] Mem.

Law and Authorities Supp. Well Luck Company Inc.'s Cross-Mot. Summ. J. and Resp.

Def.'s Mot. Summ J. Ex. H, Oct. 10, 2016, ECF No. 32-8.  These same sources, which

are all reference works concerned specifically with food, also indicate that "sunflower

seeds" can be, or are usually, dried or roasted to be eaten as a snack.[7]  See Mem. Law

---

[6] Plaintiff's cites the following sources containing definitions of "sunflower seeds" that are seeds from the sunflower plant *Helianthus annuus*: (1) John F. Mariani, The Dictionary of American Food & Drink 307 (Hearst Books 1994); (2) L. Patrick Coyle, The World Encyclopedia of Food 661 (1982); (3) Theodora Fitzgibbon, The Food of the Western World 460 (1976); (4) Alan Davidson, The Oxford Companion to Food 770 (1999); (5) Herbert W. Ockerman, Food Science Sourcebook: Terms and Descriptions, Part I 737–38 (2d ed. 1991); (6) Charles G. Sinclair, International Dictionary of Food & Cooking 527 (1998); (7) Joyce Rubash, Master Dictionary of Food and Wine 319 (1990); (8) Steven Labensky et al. eds., Webster's New World Dictionary of the Culinary Arts 388 (1997); (9) Charles Sinclair, Dictionary of Food 561 (2d ed. 2005); and (10) Dictionary of Food Science and Nutrition 231 (2006)).  See Pl.'s SJ Br. 11–15; see also Mem. Law and Authorities Supp. Well Luck Company Inc.'s Cross-Mot. Summ. J. and Resp. Def.'s Mot. Summ J. Ex. H, Oct. 10, 2016, ECF No. 32-8.

[7] Plaintiff's cites the following sources containing definitions of "sunflower seeds" that refer to the fact that seeds of the sunflower plant *Helianthus annuus* can be prepared to be eaten: (1) John F. Mariani, The Dictionary of American Food & Drink 307 (Hearst Books 1994) (defining "sunflower" as "any variety of plants in the genus *Helianthus*, especially the 'common sunflower' (H. annuus) . . . bearing seeds that are dried or roasted to be eaten as a snack); (2) L. Patrick Coyle, The World Encyclopedia of Food 661 (1982) (describing sunflower sides as seeds of the plant, *Helianthus annuus*, whose "seeds are usually the size of watermelon or pumpkin seeds. They are black or gray and occasionally dark-striped.  Dried or roasted and salted, they are eaten as a snack."); (3) Theodora Fitzgibbon, The Food of the Western World 460 (1976) (describing "sunflower seeds" as of a plant (*Helianthus annuus*) "whose seeds are dried and roasted . . . and eaten . . .They are also sold roasted by a nut vendor"); (4) Alan Davidson, The Oxford Companion to Food 770 (1999) ("sunflowers" as "*Helianthus annuus*, an annual plant of the daisy (Compositae) family, grown mainly for the valuable oil obtained from the seeds . . . [the seeds] are also a popular and nutritious snack food, raw or roasted and salted"); (5) The New Food Lover's Companion 607 (2001) (describing "sunflower seeds" as seeds of the sunflower plant, "hav[ing] a hard black-and-white striped shell that must be removed.  Sunflower seeds can be dried or roasted (either in or out of the shell, and are sold either plain or salted."); (6) Herbert W. Ockerman, Food Science Sourcebook: Terms and Descriptions, Part I 737–38 (2d ed. 1991) (describing "sunflower" as a plant (*Helianthus annuus*) grown for seed, animal feed and oil" whose "parched seed may be consumed; used for human food, to produce oil, and as poultry feed"); (7) Charles G. Sinclair, International Dictionary of Food & Cooking 527 (1998) (defining "sunflower

(footnote continued)

and Authorities Supp. Well Luck Company Inc.'s Cross-Mot. Summ. J. and Resp. Def.'s

Mot. Summ J. Ex. I, Oct. 10, 2016, ECF No. 32-9.  The general dictionaries consulted by

the court define the terms "sunflower" and "seeds" separately, and they also highlight the

fertilized or ripened ovule of the plant *Helianthus annuus*.[8]  See Webster's Third New

International Dictionary 2055, 2291 (Philip Babcock Gove, Ph. D. and Merriam-Webster

Editorial Staff eds. 1993).  These general definitions also emphasize the capability of

sowing seeds.  Id. at 2291.  Published industry sources provided by Plaintiff reflect that

---

seeds" as the seeds of the sunflower (which it defines as "a tender annual *Helianthus annuus*")" eaten raw or roasted as a snack or used in salads") ; (8) Joyce Rubash, Master Dictionary of Food and Wine 319 (1990) (defining "sunflower seeds" as "seeds of the sunflower plant; used roasted and eaten like nuts"); (9) Steven Labensky et al. eds., Webster's New World Dictionary of the Culinary Arts 388 (1997) (defining "sunflower seeds" as "seeds of the sunflower plant; have a hard black-and-white striped shell that is removed before eating; usually eaten dried or roasted, with or without salt"); (10) Charles Sinclair, Dictionary of Food 561 (2d ed. 2005) (defining "sunflower seeds" as "[t]he seeds of the sunflower, eaten raw or roasted as a snack or used in salads"); and (11) Dictionary of Food Science and Nutrition 231 (2006) (defining "sunflower seeds" as "the large seeds of the sunflower, eaten raw, roasted as a snack and used in salads").  See Pl.'s SJ Br. 11–15; see also Mem. Law and Authorities Supp. Well Luck Company Inc.'s Cross-Mot. Summ. J. and Resp. Def.'s Mot. Summ J. Ex. H, Oct. 10, 2016, ECF No. 32-8.

[8] The court consulted the following general dictionary definitions of the terms "sunflower" and "seed," respectively:

> Sunflower: 1. A plant of the genus *Helianthus*.  2. *Heliotrope*.  3. Any of various plants that either bear a superficial likeness to the common sunflower or open in the sunshine.

Webster's Third New International Dictionary 2291 (Philip Babcock Gove, Ph. D. and Merriam-Webster Editorial Staff eds. 1993).

> Seed: n. **1a.** Something that is sown or to be sown . . . **b.** the fertilized and ripened ovule of a seed plant comprising a miniature plant usu. Accompanied by a supply of food (as endosperm or perisperm), enclosed in a protective seed coat, often accompanied by auxiliary structures (as an aril or caruncle), and capable under suitable conditions of independent development into a plant similar to the one that produced it.

Webster's Third New International Dictionary 2055 (Philip Babcock Gove, Ph. D. and Merriam-Webster Editorial Staff eds. 1993).

"sunflower seeds" may be eaten as a snack either raw, roasted, or seasoned.[9]  Pl.'s Br.

Supp. X-Mot. SJ and Resp 15–19; see also Mem. Law and Authorities Supp. Well Luck

Company Inc.'s Cross-Mot. Summ. J. and Resp. Def.'s Mot. Summ J. Ex. I, Oct. 10, 2016,

ECF No. 32-9.  The food-focused lexicographic sources provided by Plaintiff therefore

indicate the commercial meaning of "sunflower seeds" may include seeds of the plant

*Helianthus annuus* that are relatively unprocessed and for general use as well as those

that are further processed by roasting, salting, and/or flavoring suitable to be eaten as a

snack.

    The General EN to Chapter 12 clarifies that the definition of the tariff term

"sunflower seeds" refers to sunflower seeds that have been minimally processed such

that they are suitable for general use.  General EN Chapter 12.  The EN indicates that

Headings 1201 through 1207

> cover seeds and fruits of a kind used for the extraction (by pressure or by
> solvents) of edible or industrial oils and fats, whether they are presented for
> that purpose, for sowing or for other purposes.  These headings **do not**,
> however, **include** . . . certain seeds and fruits from which oil may be
> extracted but which are primarily used for other purposes.
>
>                                      . . .
>
> [The seeds and fruits covered by the heading] may also have undergone
> heat treatment designed mainly to ensure better preservation (e.g., by
> inactivating the lipolytic enzymes and eliminating part of the moisture), for

---

[9] Plaintiff cites the web page of the National Sunflower Association "About Sunflower Seeds and Kernals," which describes "sunflower seeds" as "[n]ormally roasted and seasoned and seasoned and eaten as a snack".  Pl.'s Br. Supp. X-Mot. SJ and Resp. 16; see also Mem. Law and Authorities Supp. Well Luck Company Inc.'s Cross-Mot. Summ. J. and Resp. Def.'s Mot. Summ J. Ex. I, Oct. 10, 2016, ECF No. 32-9.  Plaintiff also cites the U.S. Department of Agriculture's Plant Guide, which describes the uses of sunflower seeds by stating they "were and still are eaten raw, roasted, cooked, dried, and ground, and used as a source of oil."  Pl.'s Br. Supp. X-Mot. SJ and Resp. 16–17; see also Mem. Law and Authorities Supp. Well Luck Company Inc.'s Cross-Mot. Summ. J. and Resp. Def.'s Mot. Summ J. Ex. I, Oct. 10, 2016, ECF No. 32-9.

> the purpose of de-bittering, for inactivating antinutritional factors or to facilitate their use.  However, such treatment is permitted only if it does not alter the character of the seeds and fruits as natural products and does not make them suitable for a specific use rather than for general use.

Id.[10]  Thus, the EN defines included seeds as those "used for extraction . . . of edible or industrial oils and fats, whether they are presented for that purpose, for sowing, or for other purposes."  See General EN Chapter 12.  Although one might argue that the phrase "other purposes" would capture seeds that are suitable for snacking, the EN makes clear that any processing must leave them suitable for general use, which includes oil extraction, sowing, and other purposes.  See id.  The EN specifies that seeds processed so as to make them suitable only for a specific use are not included in Chapter 12, HTSUS.  See General EN Chapter 12.  Seeds that have undergone processing that leaves them suitable only for snacking are suitable only for a specific use.

The overall structure of the HTSUS indicates that Chapter 12 includes less processed plant matter whereas Chapter 20, advocated by Defendant, includes plant matter that has been processed to a greater extent. The Customs Cooperation Council, in introducing the HTSUS system, indicated that:

> [a]s a general rule, goods are arranged in order of their degree of manufacture: raw materials, unworked products, semi-finished products, finished products.  For example, live animals fall in Chapter 1, animal hides and skins in Chapter 41 and leather footwear in Chapter 64.  The same progression also exists within other Chapters and headings.

Customs Co-Operation Council, Introducing the International Convention on the Harmonized Commodity Description and Coding System 32 (1987); see also Lawrence

---

[10] Although not controlling, the Harmonized Description and Coding System's Explanatory Notes are persuasive so long as they do not contradict the commercial meaning of an ambiguous term. StoreWALL, LLC v. United States, 644 F.3d 1358, 1363 (Fed. Cir. 2011) (citations omitted).

J. Bogard, 2 Customs Law and Administration: Commentary § 7:9 (November 2016 Update).  Therefore, based upon the words of the tariff and the intent of the drafters as to the meaning of those words reflected in the EN, as well as the structure of the tariff, the court concludes that "sunflower seeds," as used in Heading 1206, HTSUS, are seeds of the common sunflower plant, *Helianthus annuus*, that are not processed in a way that renders them unsuitable for extraction of edible or industrial oils and fats, sowing, and other purposes.

Plaintiff argues that the common and commercial meaning of "sunflower seeds" in Heading 1206, HTSUS, unambiguously includes sunflower seeds without limitation.  Pl.'s Reply Mem. Further Supp. Cross-Mot. Summ. J. and Opp'n Def.'s Cross-Mot. Summ. J. 9, Jan. 3, 2017, ECF No. 36 ("Pl.'s Reply Def.'s SJ Mot.").  Plaintiff therefore contends that a definition that limits "sunflower seeds," as used in Heading 1206, HTSUS, solely to minimally processed sunflower seeds contradicts the common and commercial meaning of the term, as supplied by the lexicographic and industry sources it provided.[11]  Id. at 10. However, the lexicographic and industry sources provided by Plaintiff include a broad definition of seeds of the common sunflower plant, *Helianthus annuus*, that may refer to either less processed sunflower seeds suitable for general purposes or more processed prepared sunflower seeds suitable for specific purposes.  Nothing in the language of the HTSUS heading itself clarifies whether this broad definition or a narrower definition

---

[11] Plaintiff also argues that Heading 1206, as an *eo nomine* provision, covers all forms of "sunflower seeds" because the language of the subheading does not contain limiting language. Pl.'s Reply Def.'s SJ Mot. 13.  However, Plaintiff cites no authority that bars a court from considering ENs that do not contradict the meaning of a tariff term provided in the statute as persuasive authority as to the meaning of an ambiguous tariff term where lexicographic sources do not clarify the ambiguity.

applies.  However, the EN to Chapter 12 and the structure of the HTSUS support a narrower interpretation of this language.

Plaintiff also argues that Congress expressed no intent to exclude sunflower seeds that are further processed for human consumption because Heading 1206, HTSUS contains no restrictive language limiting the heading only to raw or minimally processed sunflower seeds.[12]  Pl.'s Br. Supp. X-Mot. SJ and Resp. 22–23.  As an initial matter, the definition as stated by the court does not exclude all sunflower seeds processed for human consumption, merely those processed in a manner that renders the seeds unsuitable for general use.  This definition comports with the clarification of the tariff term provided by the ENs.  See EN Chapter 12.  Plaintiff contrasts the example of Heading 1202, HTSUS, which specifically excludes "roasted or otherwise cooked" peanuts, with Heading 1206, HTSUS, which lacks specific exclusionary language.  Pl.'s Br. Supp. X-Mot. SJ and Resp. 22–23.  Exclusionary language is not necessary to determine that a more restrictive definition is meant to apply in a particular tariff heading.  The fact that another provision has exclusionary language does not undermine the court's conclusion that the term "sunflower seeds" could encompass both minimally processed and further processed seeds.  The ENs, which reflect the intent of the drafters, clarify that the tariff

---

[12] Plaintiff argues that Defendant's classification impermissibly imposes a use limitation drawn from the ENs to an *eo nomine* provision where none exists in Heading 1206, HTSUS.  Pl.'s Br. Supp. X-Mot. SJ and Resp. 28.  Defining the tariff term "sunflower seeds" so as to clarify the meaning of this broad blanket term that, in common and commercial use, may apply both to minimally processed seeds suitable for sowing and oil extraction and more processed salted, roasted, and/or flavored seeds does not impose a use limitation, as Plaintiff suggests.  Neither the term "sunflower seeds" in Heading 1206, HTSUS, nor the ENs suggests that this is a tariff provision that is controlled by use.  Therefore, the court does not consider the intended or actual use of Plaintiff's imported merchandise in defining the tariff term.  See GRK Canada, Ltd. v. United States, 761 F.3d 1354, 1359 (Fed. Cir. 2014) (citations omitted).

term is meant to refer to sunflower seeds that are only minimally processed.  Plaintiff

points to no contradictory source of legislative intent indicating that "sunflower seeds," as

used in Heading 1206, HTSUS, includes roasted, salted, and/or flavored sunflower seeds.

Evaluating the tariff provision in the context of the HTSUS as a whole, the meaning of the

tariff term "sunflower seeds" in Heading 1206, HTSUS, is limited to products that have

not been processed in a way that make them unsuitable for general use.

### B.  Subheading 2008.19.90, HTSUS

Subheading 2008.19.90, HTSUS provides for:

2008 Fruit, nuts, and other edible parts of plants, otherwise prepared or
preserved, whether or not containing added sugar or other
sweetening matter or spirit, not elsewhere specified or included:

. . .

2008.19        Other, including mixtures:

. . .

2008.19.90   Other.

Subheading 2008.19.90, HTSUS.  Although neither party offers lexicographic sources to

define the tariff terms of this heading, the court has consulted several dictionary

definitions of the terms "edible," "prepared," and "preserved" for guidance in discerning

their common and commercial meanings.  The dictionary definitions of "edible" emphasize

suitability for eating, particularly for consumption by human beings.[13]   The relevant

---

[13] The court consulted the following definitions of the term "edible":
Edible: suitable by nature for use as food esp. for human beings.
Webster's Third New International Dictionary 722 (Philip Babcock Gove, Ph. D.
and Merriam-Webster Editorial Staff eds. 1993).

(footnote continued)

dictionary definitions of "prepared" emphasize making an item ready or suitable beforehand for eating.[14]  The relevant dictionary definitions of "preserved" emphasize the function of preparing food for future use, especially to prevent spoilage.[15]

---

Edible: Fit to be eaten.
The American Heritage Dictionary of the English Language 568 (Fourth Ed. 2000).

Edible: A. *adj.* Eatable, fit to be eaten . . . B. An eatable substance, an article of food.
5 The Oxford English Dictionary 70 (J.A. Simpson and E.S.C. Weiner eds., 2nd ed. 1989).

[14] The court consulted the following definitions for "prepared" or "prepare":
Prepared: made ready, fit, or suitable beforehand treatment.
Webster's Third New International Dictionary 1791 (Philip Babcock Gove, Ph. D. and Merriam-Webster Editorial Staff eds. 1993).

Prepare: *vt.* 1a: to make ready for eating.
Id. at 1790.

Prepare: *v.* –pared, -paring, -pares —*tr.* . . . 2. To put together or make by combining various elements or ingredients; manufacture or compound.
The American Heritage Dictionary of the English Language 1386 (Fourth Ed. 2000).

Prepared: 5. To make ready (food, a meal) for eating . . . 7. a. To make, produce, or form for some purpose; in mod. use *esp.* "to make by regular process".
12 The Oxford English Dictionary 376 (J.A. Simpson and E.S.C. Weiner eds., 2nd ed. 1989).

[15] The court consulted the following dictionary definitions for "preserved" or "preserve":
Preserve: 3a: to keep or save from decomposition (as by refrigeration, curing, or treating with a preservative).
Webster's Third New International Dictionary 1794 (Philip Babcock Gove, Ph. D. and Merriam-Webster Editorial Staff eds. 1993).

Preserve: *v.* 4. To prepare (food) for future use as by canning or spoiling . . . — *intr.* 1.To treat fruit or other foods so as to prevent decay.
The American Heritage Dictionary of the English Language 1388 (Fourth Ed. 2000).

(footnote continued)

The EN to Heading 2008 clarifies the sorts of preservation and preparation contemplated by Heading 2008, HTSUS:

> This heading covers fruit, nuts and other edible parts of plants, whether whole, in pieces or crushed, including mixtures thereof, prepared or preserved otherwise than by any of the processes specified in other Chapters or in the preceding headings of this Chapter.
> It includes, *inter alia*:
> (1) Almonds, ground-nuts, areca (or betel) nuts and other nuts, dry-roasted or fat-roasted, whether or not containing or coated with vegetable oil, salt, flavours, spices or other additives.
> . . .
> The products of this heading are generally put up in cans, jars or airtight containers, or in casks, barrels or similar containers.

EN, Heading 2008.  Thus, subheading 2008.19.90, HTSUS covers parts of plants made ready or suitable in advance for eating, such as by dry-roasting or fat roasting, whether or not containing or coated with vegetable oil, salt, flavors, spices or other additives, and made fit for future use in a manner to prevent spoilage.

## II.  Plaintiff's Sunflower Seeds

Plaintiff's sunflower seeds are not classified in subheading 1206.00.00, HTSUS because it is undisputed that they are not suitable for general use.  In order for Plaintiff's imported seeds to fall within Heading 1206, HTSUS, they must be suitable for general

---

Preserve: [3a.] To prepare (fruit, meat, etc.) by boiling with sugar, salting, or pickling so as to prevent its decomposition or fermentation.
12 The Oxford English Dictionary 405 (J.A. Simpson and E.S.C. Weiner eds., 2nd ed. 1989).

Preserved: 2. *spec.* a. Treated so as to resist putrefaction.
Id.

use rather than a specific use.[16]  It is undisputed that the "Spiced Flavor" and "Coconut Flavor" varieties of imported merchandise are wet-cooked in water, sweeteners, spice and/or flavoring at 248 degrees Fahrenheit (120 degrees Celsius).  Def.'s Statement Facts ¶ 4(ii); Pl.'s Resp. Def.'s Facts ¶¶ 4(ii).  It is likewise undisputed that the seeds in all varieties of Plaintiff's imported merchandise are heated in an oven to 302 degrees Fahrenheit (150 degrees Celsius) for approximately 65 minutes.  Def.'s Statement Facts ¶¶ 3(ii), 4(iv); Pl.'s Resp. Def.'s Facts ¶¶ 3(ii), 4(iv).  Salt is added to the seeds during this heating process for all varieties.  Def.'s Statement Facts ¶¶ 3(ii), 4(iv); Pl.'s Resp. Def.'s Facts ¶¶ 3(ii), 4(iv).  There is unrefuted evidence offered by Defendant that heating sunflower seeds at temperatures of 302 degrees Fahrenheit (150 degrees Celsius) adversely affects the harvest, viability, preservation, and storage of the seeds.  See Def.'s Mem. Supp. Mot. Summ. J. Ex. G, Sept. 1, 2016, ECF No. 29-6 (including a study indicating that a drying temperature of greater than 53 degrees Celsius should not be used if seed viability is to be maintained); Def.'s Mem. Supp. Mot. Summ. J. Ex. H, Sept. 1, 2016, ECF No. 29-6 (including another study indicating that sunflowers to be used for seed should not be dried at temperatures over 110 degrees Fahrenheit).[17]  Therefore, it is undisputed that heating the sunflower seeds to 150 Degrees Celsius for approximately

---

[16] It is undisputed that Plaintiff's imported merchandise contains seeds of the common sunflower plant, *Helianthus annuus*.  Def.'s Statement Facts ¶ 5; Pl.'s Resp. Def.'s Facts ¶ 5.  It is likewise undisputed that Plaintiff's imported products contain sunflower seeds that are in unbroken shells. Def.'s Statement Facts ¶¶ 1–2; Pl.'s Resp. Def.'s Facts ¶¶ 1–2.

[17] Plaintiff concedes that the sunflower seeds in its imported merchandise are not fungible or interchangeable with raw sunflower seeds or those that only undergo heat treatment: (1) to ensure better preservation of the seeds (e.g., by inactivating lipolytic enzymes and eliminating moisture); (2) to inactivate anti-nutritional factors; (3) to facilitate their use; or (4) designed mainly for the purpose of de-bittering.  Def.'s Statement Facts ¶¶ 8–11, 13; Pl.'s Resp. Def.'s Facts ¶¶ 8–11, 13.

65 minutes renders Plaintiff's imported merchandise unsuitable for sowing, one of the general uses listed in the General EN to Chapter 12.  Plaintiff recognizes that "baking at 150°C (302°F) may adversely affect the use of oil-type seeds for extraction," <u>see</u> Pl.'s Br. Supp. X-Mot. SJ and Resp. 34, and Plaintiff offers no affirmative evidence that its seeds are suitable for oil extraction.[18]   Thus, the sunflower seeds in Plaintiff's imported merchandise are not prima facie classifiable as "sunflower seeds," as that term is used in Heading 1206, HTSUS, because the seeds in Plaintiff's imported merchandise are not suitable for general use because they are processed in a way that makes them unsuitable for all uses. [19]

---

[18] Plaintiff argues that the fact that its sunflower seeds may not be suitable for oil extraction is irrelevant to classifying its seeds, which are confectionary-type sunflower seeds that are baked at 150 degrees Celsius (302 degrees Fahrenheit), because baking does not affect their suitability for their intended use (<u>i.e.</u>, for human consumption as a snack).  <u>See</u> Pl.'s Br. Supp. X-Mot. SJ and Resp. 34.  Plaintiff implies that the industry understands that only "oil-type seeds" are used for oil extraction.  <u>See</u> <u>id.</u>  This argument also fails because Heading 1206, HTSUS, does not distinguish between "oil-type" seeds and "confectionary" seeds.  <u>See</u> Heading 1206, HTSUS.

Plaintiff's argument ignores the meaning of Heading 1206, HTSUS, which excludes "sunflower seeds" processed in a manner that makes them suitable for a specific use rather than for general use.  <u>See</u> General EN Chapter 12.  Even if Plaintiff's imported merchandise is suitable for snacking, an "other purpose," Plaintiff offers no evidence that they are suitable for sowing or oil extraction.  On the other hand, Defendant offers uncontroverted evidence that Plaintiff's seeds are not suitable for sowing because heating the seeds to the temperatures Plaintiff does affects their viability for sowing.  <u>See</u> Def.'s Mem. Supp. Mot. Summ. J. Ex. G, Sept. 1, 2016, ECF No. 29-6 (including a study indicating that a drying temperature of greater than 53 degrees Celsius should not be used if seed viability is to be maintained); Def.'s Mem. Supp. Mot. Summ. J. Ex. H, Sept. 1, 2016, ECF No. 29-6 (including another study indicating that sunflowers to be used for seed should not be dried at temperatures over 110 degrees Fahrenheit).

Plaintiff also implies that the heating to which its seeds are subjected "is moderate heat designed mainly to ensure better preservation, inactivate lipolytic enzymes, and remove moisture."  <u>See</u> Pl.'s Br. Supp. X-Mot. SJ and Resp. 34–35.  However, Plaintiff concedes that its seeds are not fungible or interchangeable with seeds that undergo heat treatment for any of these purposes.  <u>See</u> Def.'s Statement Facts ¶¶ 9–13; Pl.'s Resp. Def.'s Facts ¶¶ 9–13.

[19] Plaintiff maintains that even if its imported merchandise is prima facie classifiable under both Heading 1206, HTSUS, and subheading 2008.19.90, HTSUS, it is more properly classifiable in

Plaintiff's imported roasted, salted and/or flavored sunflower seeds are "seeds" Not Elsewhere Specified or Included Within Subheading 2008.19.90, HTSUS.  Both parties concede that, as seeds of the common sunflower plant, *Helianthus annuus*, Plaintiff's imported merchandise are parts of plants.  Def.'s Statement Facts ¶ 5, Pl.'s Resp. Def.'s Facts ¶ 5.  It is likewise undisputed that Plaintiff's imported merchandise is used, as is, for human consumption.  Def.'s Statement Facts ¶ 6, Pl.'s Resp. Def.'s Facts ¶ 6.  Thus, Plaintiff's merchandise is an edible part of a plant.

Both parties concede that all varieties of Plaintiff's merchandise are heated in an oven at 302 degrees Fahrenheit for approximately 65 minutes.  Def.'s Statement Facts ¶¶ 3(ii), 4(iv); Pl.'s Resp. Def.'s Facts ¶¶ 3(ii), 4(iv).  It is undisputed that all varieties of Plaintiff's imported merchandise are roasted and salted.  Def.'s Statement Facts ¶¶ 3(ii), 3(iv), 4(iv), 4(vi); Pl.'s Resp. Def.'s Facts ¶¶ 3(ii), 3(iv), 4(iv), 4(vi).  Therefore, Plaintiff's imported merchandise is prepared or preserved by dry-roasting and salting.  Plaintiff points to no other section of the HTSUS other than subheading 2008.19.90, HTSUS that might otherwise include sunflower seeds processed in the manner that Plaintiff's imported merchandise is processed.  The court cannot locate any competing tariff provision that covers edible seeds from plants processed in the manner that Plaintiff processes its imported sunflower seed snacks.  Therefore, as a matter of law, Plaintiff's imported roasted, salted, and/or flavored sunflower seed snack products are seeds that are

---

HTSUS heading 1206 because Heading 1206, HTSUS, describes Plaintiff's merchandise with far more precision and accuracy and encompasses a narrower range of items.  Pl.'s Br. Supp. X-Mot. SJ and Resp. 35–38 (citing GRI Rule 3(a)).  The court need not reach GRI 3(a) because Plaintiff's merchandise is not prima facie classifiable as "sunflower seeds" under Heading 1206, HTSUS.

prepared or preserved not elsewhere specified or included within the meaning of subheading 2008.19.90, HTSUS.

Plaintiff argues that its "roasted, salted, and flavored sunflower seeds in the shell eaten as a snack" are "sunflower seeds" within the meaning of Heading 1206, HTSUS, because snacking is an "other purpose." Pl.'s Br. Supp. X-Mot. SJ and Resp. 33–35. However, as already discussed, Heading 1206, HTSUS, excludes "sunflower seeds" processed in a manner that does not make them suitable for all uses. Sunflower seeds suitable for general use must be suitable for sowing and oil extraction, not just suitable for snacking. See General EN Chapter 12. Roasted, salted, and/or flavored sunflower seeds are not suitable for sowing. See Def.'s Mem. Supp. Mot. Summ. J. Ex. G, Sept. 1, 2016, ECF No. 29-6 (including a study indicating that a drying temperature of greater than 53 degrees Celsius should not be used if seed viability is to be maintained); Def.'s Mem. Supp. Mot. Summ. J. Ex. H, Sept. 1, 2016, ECF No. 29-6 (including another study indicating that sunflowers to be used for seed should not be dried at temperatures over 110 degrees Fahrenheit). Plaintiff recognizes that "baking at 150°C (302°F) may adversely affect the use of oil-type seeds for extraction," see Pl.'s Br. Supp. X-Mot. SJ and Resp. 34, and Plaintiff offers no affirmative evidence that its seeds are suitable for oil extraction. Therefore, Plaintiff's imported merchandise is not suitable for general purposes and is not "sunflower seeds" within the meaning of Heading 1206, HTSUS.

## CONCLUSION

For the foregoing reasons, the roasted, salted, and/or flavored sunflower seeds at issue in this case are properly classifiable as "Nuts, peanuts (ground nuts) and other

seeds, whether or not mixed together: Other including mixtures: Other" under subheading

2008.19.90, HTSUS.   Therefore, Defendant's motion for summary judgment is granted,

and Plaintiff's motion for summary judgment is denied.   Judgment will be entered

accordingly.

 /s/ Claire R. Kelly  
Claire R. Kelly, Judge

Dated: February 15, 2017
        New York, New York